MABEL T. COLSON v. THE STATE MUTUAL LIFE ASSURANCE COMPANY OF WORCESTER, MASSACHUSETTS.

(Filed 28 January, 1935.)

1. **Insurance K a—Local agent's knowledge that insured had diabetes at time of application for reinstatement of policy held imputed to insurer.**

   In the absence of fraud or collusion on the part of the local agent of insurer, knowledge of the local agent accepting insured's application for reinstatement of the policy that insured was then suffering with diabetes, is imputed to insurer and is a waiver of the provisions of the application for reinstatement signed by insured that he had not suffered from any disease whatsoever for the past twelve months, and that the truth of the statements in the application was made the basis for reinstatement of the policy, and the evidence in this case was properly submitted to the jury under correct instructions from the court.

2. **Appeal and Error J e—**

   The admission of evidence over defendant's objection is held not prejudicial under the facts of this case, the evidence objected to not being material to plaintiff's right to recover and its admission not being harmful to defendant.

APPEAL by defendant from *Hill, Special Judge,* and a jury, 16 April Term, 1934. From FORSYTH. No error.

The following issues were submitted to the jury and their answers thereto: "(1) Did James H. Colson, in the application for reinstatement of the policy sued on, declare that he was then in sound health and that during the past twelve months he has had no disease, injury, or impairment of health, as alleged? A. 'Yes.' (2) Did said James H. Colson, at the time he applied for reinstatement of the policy sued on, have diabetes, and had he been suffering from such disease within twelve

months prior thereto, as alleged in the answer? A. 'Yes.' (3) Did James H. Colson know at the time he made said declarations that he had diabetes? A. 'Yes.' (4) Did the defendant, through its agent, E. M. Spivey, at the time of the reinstatement of the policy sued on, have knowledge that James H. Colson was suffering from diabetes? A. 'Yes.'"

The court below rendered judgment on the verdict. The defendant made numerous exceptions and assignments of error and appealed to the Supreme Court. The material ones and necessary facts will be set forth in the opinion.

*John C. Wallace and Parrish & Deal for plaintiff.*
*Manly, Hendren & Womble for defendant.*

CLARKSON, J. The defendant admitted that, pursuant to a written application, it, under date of 3 April, 1931, issued and delivered to James H. Colson, the husband of the plaintiff, a policy of insurance upon the life of the said James H. Colson, No. 388016, in the face amount of five thousand dollars ($5,000), the plaintiff Mabel T. Colson being the beneficiary therein, and that premiums due 3 January, 1933; 3 April, 1933; 3 July, 1933; and 3 October, 1933, were duly paid; the defendant further admitted that James H. Colson died in Winston-Salem, N. C., on 6 October, 1933, and that due proofs of death were filed, and that demand had been made upon it for the payment of the face amount of said policy. The policy was offered in evidence. The only provision in the policy pertinent to this suit is that with respect to reinstatement, which reads as follows: "This policy may be reinstated at any time after default in premium payment, provided it has not been surrendered for its cash value, or its extension period expired, upon the production of evidence, satisfactory to the company, of the insurability of the person whose life was insured and the payment of all overdue premiums and the payment or reinstatement of any other indebtedness to the company under this policy, with simple interest at the rate of six per cent per annum."

The application for reinstatement is as follows: "Application for Reinstatement to State Mutual Life Assurance Company of Worcester, Massachusetts, Policy No. 388016; Premium, $40.55, Due Date, 3 October, 1933. I hereby make application for reinstatement of the above numbered policy, which lapsed for nonpayment of the premium indicated; and for the purpose of inducing the company to reinstate said policy I do hereby declare that I am now in sound health and that during the past twelve months I have had no disease, injury, or impairment of health whatsoever, neither have I consulted nor been treated by any physician, surgeon, or practitioner; and that I have made no

application for life insurance to any company or society which was rejected, postponed, or modified in kind, amount, or rate. I further agree that the truth of the foregoing statements shall be the basis of reinstatement of said policy, and the acceptance by the company of the premium now in default shall not be taken as a precedent for future similar action. (Signed) James Hardy Colson, Applicant. (Colson) written in lead pencil. This application must be dated and witnessed when signed. I certify that the foregoing application was signed in my presence at Winston-Salem, State of North Carolina, under date of 28 November, 1932. Witness: E. M. Spivey. This application is required if the premium is paid after thirty-one days, but within two months of the due date."

It is contended by defendant that the statements made by James Hardy Colson in the application for reinstatement of the policy were false. That he was not in sound health, but had diabetes. That the defendant company is not estopped or the provision waived by the knowledge of the agent of the false answers of the insured. On the other hand, plaintiff contended that E. M. Spivey was an agent of defendant company and had full authority to reinstate James Hardy Colson. That with full knowledge of all the facts, and in the scope of his employment, and without fraud or collusion on the part of the insured and agent, waived the provision as to diabetes in the application for reinstatement, and reinstated the applicant to full benefits under the insurance policy.

The controversy waged around the fourth issue, which was mainly one of fact. The jury answered this disputed fact from a charge of the court below, free from error, in favor of the plaintiff. We do not think the verdict and judgment should be disturbed. The defendant, in its brief, states: "The theory upon which the case was tried is that the verdict and judgment should be for the defendant upon issues 1, 2, and 3, unless the knowledge of the agent (Spivey) is imputed to the defendant. So the principal question is: Under what circumstances is the knowledge of an agent of an insurance company to be imputed to the principal?" On this aspect the court below charged the jury: "With reference to the fourth issue, gentlemen, the court instructs you that the knowledge of an agent, when acting within the scope of the powers entrusted to him, will be imputed to his principal, the company, provided there is no fraud or collusion between the insured and the agent. If there should be fraud or collusion between the insured and the agent, then knowledge of the agent would not be imputed to the company, that is, the principal."

In *Laughinghouse v. Insurance Co.,* 200 N. C., 434 (436), speaking to the subject, we find: "It is held that in the absence of fraud or collu-

sion between the insured and the agent, the knowledge of the agent, when acting within the scope of the powers entrusted to him, will be imputed to the company, though the policy contains a stipulation to the contrary. *Short v. LaFayette Ins. Co.,* 194 N. C., 649; *Insurance Co. v. Grady,* 185 N. C., 348."

In *Trust Co. v. Insurance Co.,* 201 N. C., 552 (555), we find: "Couch, Encyclopedia of Insurance Law, Vol. 6, sec. 1375, states the proposition as follows: 'And a contract for reinstatement of a life policy is not a new contract; rather, it is merely a waiver of forfeiture, so that the original policy is restored and made as effective as if no forfeiture had occurred, unless the contract for reinstatement is itself tainted with such fraud as would justify the company in repudiating.'"

Dr. Wingate M. Johnson, a witness for defendant, testified, in part: "Until the discovery of insulin diabetes would have a good deal of effect towards shortening the normal span of life, but since the discovery of insulin, it is possible to live out a normal life expectancy."

We see no error in the exclusion of the opinion of this doctor as to whether a person who has diabetes has an insurable risk. It was immaterial to the controversy—it may not be amiss to state that the evidence is to the effect that Colson did not die of diabetes, but another cause wholly apart from this disease. The charge of the court below gave all the contentions of the parties to the controversy fairly and charged the law applicable to the facts correctly. We see no prejudicial or reversible error.

No error.