WILLIAM NELSON THOMPSON v. MUTUAL BENEFIT HEALTH AND
ACCIDENT ASSOCIATION.

(Filed 18 March, 1936.)

1. **Insurance K a—Knowledge of local agent at inception of policy is imputed to insurer when agent does not participate in fraud.**

   Where an applicant for life or health insurance discloses to insurer's local soliciting agent all material facts and circumstances relative to the risk, knowledge of the local agent is imputed to insurer, and constitutes a waiver by insurer of the right to declare the policy void for fraud in the failure of the application to state material matters relative to the health of applicant at the time of the inception of the policy, when the agent does not participate in the alleged fraud.

2. **Insurance P b—Conflicting evidence as to knowledge of local agent held to raise issue of fact for determination by jury.**

   Where applicant testifies that he made disclosure to insurer's soliciting agent of all matters relating to health called for in the application, and the soliciting agent testifies that applicant did not make such disclosure, the conflicting testimony raises an issue of fact for the jury, and insurer's motion to nonsuit upon the evidence is correctly denied.

3. **Insurance E b—**

   Subordinate conditions and provisos limiting and restricting the primary object of the policy to afford protection upon the happening of certain contingencies, should be strictly construed against insurer.

4. **Insurance R a—Evidence held for jury upon question of degree of disability suffered by insured.**

   The policy in question provided two schedules of benefits for illness causing total temporary disability and loss of time, and necessitating regular visits by a physician, the larger benefits to be paid for such illness which continuously confined insured within doors, and the smaller schedule for such illness which did not continuously confine insured indoors. Plaintiff's evidence tended to show illness causing total temporary disability and necessitating regular attendance by a physician, but that on orders of his physician he took infrequent walks of not more than two blocks from his home. *Held:* The provision relating to continuous confinement within doors was to describe the character and extent of illness rather than to prescribe limitations upon insured's conduct, and the evidence was properly submitted to the jury under correct instructions by the court on the question of whether insured's illness and disability came within the provision for the greater or lesser benefits.

APPEAL by defendant from *Moore, Special Judge,* at September Special Term, 1935, of MECKLENBURG. No error.

This is an action wherein the plaintiff seeks to recover illness indemnity benefits for "confining illness" under a health insurance policy issued to him by the defendant on 17 November, 1931, and wherein the

defendant seeks, first, to avoid all liability upon the ground that the issuance of said policy was procured by fraud, and, second, to limit the recovery of the plaintiff to the benefits allowed for "nonconfining illness."

There was evidence tending to establish the plaintiff's allegation of total disability and total loss of time from 1 August, 1934, to 14 November, 1934, and that his illness confined him within doors and required the regular attention of a physician. On the other hand, there was evidence tending to establish the defendant's allegations that the policy was procured by fraud, and that the plaintiff's illness did not confine him within doors and therein require the regular attention of a physician.

The case was submitted to the jury under appropriate issues, and from a judgment based on an adverse verdict the defendant appealed, assigning errors.

*Ralph V. Kidd and John M. Robinson for plaintiff, appellee.*
*J. Laurence Jones and J. L. DeLaney for defendant, appellant.*

SCHENCK, J. The assignments of error are treated in the briefs in two groups, and we will consider them as grouped.

The first group of assignments relates to the motions for judgment as of nonsuit. It is conceded in the brief of the appellant that it "would not be entitled to a judgment of nonsuit unless the court finds that the policy was void as a matter of law under the evidence."

The fraud alleged, upon which appellant seeks to have the policy declared void, is in effect that the insured concealed from the insurer that he had been ill over a long period for which he had collected health insurance, and that a railway employee benefit association had refused to renew a health policy he formerly carried with it, and that he had suffered from and collected insurance for attacks of influenza, neuritis, and neurasthenia, and that the insured had represented that he was "sound physically and mentally" at the time he made application for the policy when in truth and in fact he knew he was suffering from nervous exhaustion, "special weakness in right arm" (telegrapher's cramp), and an irregular heart and sub-acute endocarditis, and, further, that within the last five years he had been treated by only one physician and by him only for pyrogenic poisoning from his teeth, whereas he had been treated by a number of other physicians for various maladies.

The plaintiff, in his reply to the answer of the defendant, denied the allegations of fraud by either concealment or misrepresentations, and averred that at the time his application for insurance was solicited and obtained he made a full and complete disclosure to the agent of the

insurer of the facts relative to his former illnesses, collection of health insurance benefits, the reason for the refusal of the railway employees benefit association to rewrite the policy formerly held by him, and had concealed no facts from such agent and had made no misrepresentation of facts to such agent.

The court, without objection, submitted the following issue: "Was the policy of insurance, plaintiff's 'Exhibit A,' obtained from the defendant insurance company by means of false representations or concealments, as alleged in the answer?" There was evidence to sustain the allegations both of the defendant and of the plaintiff, and the jury answered the issue in favor of the plaintiff. There are no assignments of error either to the evidence or to the charge as they relate to this issue, the defendant having contented itself to rely upon its motions for judgment as of nonsuit.

The motions for judgment as of nonsuit cannot be sustained. It has been repeatedly held by this Court, and courts of other jurisdictions, that if an agent of an insurance company, while acting within the scope of his authority in soliciting and taking applications for insurance, is advised of the facts constituting any alleged fraud, and did not himself participate in such fraud, the knowledge of the agent will be imputed to the insurer. This principle applies to conditions existing at the time of the inception of the policy and not after the policy has been issued. The doctrine of waiver is applied upon well settled principles of equity. *Smith v. Insurance Co.,* 208 N. C., 99; *Colson v. Assurance Co.,* 207 N. C., 581.

In the case at bar there is no suggestion that the agent was not acting within the scope of his authority or that he participated in the alleged fraud. The defendant offered the agent as witness in its behalf and he testified that when he solicited and obtained the application for the policy he was not informed of the plaintiff's illnesses or of his former policies, and was generally ignorant of the facts which the defendant set up as constituting the fraud. The evidence was sharply in conflict and presented a question for the jury, not the court.

The second group of assignments relates to the question as to whether the plaintiff's claim for illness indemnity, under the evidence, falls under Part J or Part K of the policy, relative to "confining illness" and "non-confining illness," respectively. The plaintiff contends the claim falls under the former and the defendant under the latter. The portions of the policy involved are as follows:

"Part J. The association will pay, for one day or more, at the rate of seventy-five ($75.00) dollars per month for the first fifteen days and at the rate of one hundred fifty ($150.00) dollars per month thereafter

for disability resulting from disease, the cause of which originates more than thirty days after the date of this policy, and which confines the insured continuously within doors and requires regular visits therein by legally qualified physician; provided, said disease necessitates total disability and total loss of time."

"Part K.    The association will pay, for one day or more, at the rate of seventy-five ($75.00) dollars per month, but not exceeding one month, for disability resulting from disease, the cause of which originates more than thirty days after the date of this policy, and which does not confine the insured continuously within doors, but requires regular medical attention; provided, said disease necessitates total disability and total loss of time."

There is no controversy as to the plaintiff having had a disability resulting from disease, the cause of which originated thirty days after the date of the policy, that required regular medical attention, and that such disease necessitated total disability and total loss of time.    The controversy is over the court's submitting to the jury, under the evidence in the case, the issue as to whether the plaintiff's disability was such as to confine the insured continuously within doors and to require regular visits therein by legally qualified physician.

The evidence is to the effect that the plaintiff's disability due to disease during the time alleged, from 1 August, 1934, to 14 November, 1934, confined the plaintiff to his home and required regular visits of a legally qualified physician there, except that he sometimes went to his doctor's office a half-block from where he lived for treatment, and occasionally went to the A. & P. Store and library, both within a half-block of his home, and had walked to the barber shop and shoe shop within a block and a half of his home, but that during all of this time he was totally disabled and was suffering a total loss of time, and had been able to do but little except to sit in a chair, and that the doctor advised him to get out and walk some in order to regain the use of his legs, and that such walking as he did was not for pleasure or profit, but in obedience to the doctor's advice.

The question presented is whether the fact that the plaintiff occasionally walked from his home when he was suffering total disability and total loss of time took his protection from Part J and placed it in Part K.    The purpose of the provision relative to the insured's being continuously confined within doors was to describe the character and extent of his illness, rather than to prescribe a limitation upon his conduct.    The insured took out the policy as an indemnity against loss in case of total disability to pursue his usual vocation.    This indemnity was the principal object of the contract and the protection for which the

insured paid the premiums. The subordinate conditions and provisos of the policy should be strictly construed against the insurer, since they limit the scope and purpose of the principal object for which the policy was taken out. We are of the opinion that the interruption or break in the strict continuity of the confinement of the insured within doors is not such a departure from the contract, or in such violation of its provisions, as to take the insured's protection from Part J to Part K. To give the provision relative to confinement within doors such a construction would be to so magnify the letter as to practically nullify the principal object of the policy. *Wade v. Mutual Benefit Health & Accident Association,* 177 S. E., 611 (W. Va.) ; *Mutual Benefit Health & Accident Association v. McDonald,* 215 P., 135 (Col.). "Not of the letter, but of the spirit: for the letter killeth but the spirit giveth life." 2 Corinthians 3 :6.

The fourth issue was: "If so, has said total disability confined the plaintiff continuously within doors since said date during the period set out in the complaint, requiring regular visits therein by a legally qualified physician?" and we hold that his Honor properly charged the jury thereupon as follows: "I charge you, gentlemen of the jury, upon the fourth issue, that if you find as facts from the evidence, and by its greater weight, that on 1 August, 1934, the plaintiff became totally disabled from a cause originating more than thirty days after the date of the policy; that thereafter, from 1 August, 1934, until 14 November, 1934, the plaintiff was totally disabled; that during this entire period his physical condition was of such seriousness as to necessitate him being indoors; that he got out of the house infrequently and only because of his doctor's instructions to do so as much as possible; that he spent practically all of his time indoors; that he got out of doors for only short periods of time and only went short distances of not over two blocks, and that these infrequent departures from the house were not of such a character as to imply any lessening of the gravity of his illness; that during the entire period in question his condition was such as to require regular visits and attention of a physician, and that during said entire period he was, in fact, under the constant care and attention of a physician, I charge you, if you find all those facts by the greater weight of the evidence, you should answer the fourth issue 'Yes.' "

In the trial of the Superior Court we find

No error.