VANNIE GLENN v. GATE CITY LIFE INSURANCE COMPANY.

(Filed 7 January, 1942.)

1. Insurance § 38—

A policy providing for weekly benefits for sickness so long as the policy-holder remains totally disabled is a policy of general coverage for disability from sickness and will be construed to effectuate its primary purpose to provide such benefits, and subsequent subordinate limitations will be strictly construed against insurer, since they limit the scope and purpose for which the policy was taken out.

2. Same—

A provision in a health policy that benefits thereunder would be paid only when insured has been confined to his or her bed or house for seven consecutive days describes the character and extent of illness covered, rather than a limitation upon insured's conduct.

3. Same—Evidence held to show that insured was confined to home within intent and spirit of limitation in health policy.

The policy in suit provided weekly benefits for sickness so long as insured remained totally disabled, but by later subordinate condition provided that weekly benefits for sickness would be paid only when insured had been confined to his bed or home for seven consecutive days. The action was submitted to the court by agreement, and the court found, upon supporting evidence, that after losing his job because of poor eyesight, insured stayed at home from worry some five or six weeks, but that since such time he had not been so confined, but had continued to be totally disabled. *Held:* The facts do not disclose such failure to meet the conditions of the policy as to confinement as would preclude recovery.

4. Same—Disease of eye is "sickness" within meaning of health policy.

This action on a policy providing for weekly benefits for sickness so long as insured should remain totally disabled was submitted to the court under agreement of the parties. *Held:* Evidence that insured's eyesight had been practically destroyed by disease or a complication of diseases sustains the court's finding that disease of the eye is sickness within the terms of the policy and that as a result of said sickness insured is totally disabled, since the word "sick" means "affected with disease."

APPEAL by defendant from *Rousseau, J.,* at June Term, 1941, of FORSYTH. Affirmed.

This is an action wherein the plaintiff seeks to recover weekly sick benefits under two health, accident and life insurance policies issued to him by the defendant on 23 December, 1918, and on 18 August, 1919, respectively, and wherein defendant seeks to avoid liability upon the ground that the plaintiff was not sick as contemplated by the provisions of the policies.

The policies provide that the defendant will pay to the plaintiff "weekly sick and accident benefits named in schedule below (Section A) . . . Section A. Weekly sick and accident benefits—$5.00. (Note: $5.00 in one policy and $2.00 in the other) . . . Full amount of weekly sick and accident benefits will be paid from date of this policy. The weekly benefits under this policy are not limited to any number of weeks, but covers fifty-two weeks in any one year or will be paid as long as the policy holder remains totally disabled. . . . After this policy has been in force five full years from the date hereof the weekly sick . . . benefits . . . shown in Section A . . . above, will be increased 20% and will remain so as long as this policy continues in force. . . . Additional conditions and agreements . . . 2nd. Weekly benefits for sickness will only be paid when the insured has been confined to his or her bed or house for seven consecutive days."

There are various other provisions and conditions as to the payment of premiums by the insured and the giving of notice to the company of sickness and disability, but these have no application to the case at bar since it is admitted or stipulated that all premiums due were paid and that the policies were in full force and effect at the time of the trial, and that the defendant had timely knowledge of the disability of the plaintiff and all notices or proofs of claim required of the insured to the company were waived. This action involves claims only for sick benefits, there being no allegation of or contention for accident benefits.

The following appears in the record: "Counsel for the plaintiff and counsel for the defendant dispensed with the intervention of the jury and consented and agreed that the presiding judge might hear and find all facts and conclusions of law and render its verdict."

His Honor found, *inter alia,* as facts: "That on 23 May, 1939, the plaintiff, who had been employed for a number of years by the Brown-Williamson Tobacco Company at its Winston-Salem plant, was discharged because of such a degree of blindness that he could not perform the duties incident to his work. That thereafter, the plaintiff was confined in his home for some five or six weeks, by reason of worry due to the loss of his eyes and his inability to work, but since the said five or six weeks immediately following 23 May, 1939, the plaintiff has not been confined to his bed or house. That the plaintiff was not attended by a doctor during the five or six weeks of his confinement to his bed or home, or at any time at his bedside. There is no evidence that the condition of the plaintiff's eyes was such as to require the actual attendance of a physician at his bedside during any of the time that he was confined to his bed or house. . . . The Court further finds that the diseases of the eyes is sickness within the terms of the policy, and that the disability of the plaintiff, which prevents him from performing any occupation, is

22—220

the result of said sickness, and that the plaintiff is totally disabled from performing or pursuing any work of a gainful character, due to the diseased condition of his eyes."

His Honor concluded as a matter of law, and adjudged, that the plaintiff recover of the defendant $6.00 per week on one policy, and $2.40 per week on the other policy, from 30 May, 1939, till the date of trial, 110 weeks, and interest on each weekly payment due. From this judgment the defendant appealed, assigning errors.

*Elledge & Wells for plaintiff, appellee.*
*Ingle, Rucker & Ingle for defendant, appellant.*

SCHENCK, J. The appellant's first and second assignments of error are to the court's refusal to grant its motion lodged when the plaintiff had introduced his evidence and rested his case and renewed when all the evidence was in for a judgment as in case of nonsuit (C. S., 567). These assignments of error cannot be sustained, since the evidence supports the findings of fact and these findings sustain the conclusions of law reached by the court.

The third assignment of error brought forward by the appellant is to the refusal of the court to enter judgment as tendered by the defendant. This assignment is likewise untenable since the judgment tendered was one of dismissal of the action and the facts found were of a contrary import.

The fourth assignment of error brought forward by the appellant is to the court's "refusing to find as a fact that there was no evidence that the condition of the plaintiff's eyes has at any time impaired his general health." It is upon this assignment of error that the appellant bottoms his principal argument for a reversal.

By the policies in suit the defendant agreed to pay the plaintiff weekly sick benefits—this is an unqualified agreement unless limited by the "additional conditions and agreements" subsequently set out in the policies; in other words, the policies are policies of general coverage, unless by the aforesaid subsequent conditions and agreements they are converted into policies of limited coverage.

The subsequent condition and agreement which the defendant contends converts the policies in suit from general to limited coverage is the one which reads: "Weekly benefits for sickness will only be paid when the insured has been confined to his or her bed or house for seven consecutive days."

His Honor found that "the plaintiff was confined in his home for some five or six weeks, by reason of worry due to the loss of his eyes

and his inability to work, but since the said five or six weeks immediately following May 23, 1939, the plaintiff has not been confined to his bed or house."

It is the contention of the defendant that this finding of fact is in conflict with the subsequent finding of fact that "the diseases of the eyes is sickness within the terms of the policy, and that the disability of the plaintiff, which prevents him from performing any occupation is the result of said sickness," and that such findings do not sustain the conclusion of law that the plaintiff is entitled to recover under the policies from the defendant.

In view of the fact that the evidence discloses that the plaintiff was, and "remains totally disabled" from diseases of the eyes, we do not concur in the contention of the defendant. The plaintiff took out the policies in suit that he might be paid weekly benefits in the event of sickness. This was the principal object of the contract and the protection for which the insured paid the premiums, and any subordinate conditions and agreements in the policies should be strictly construed against the insurer, since they limit the scope and the very purpose for which the policies were taken out. We are of the opinion that the fact that the evidence tends to show, and the finding of fact is to the effect, that "the plaintiff was confined to his home for some five or six weeks, by reason of worry due to loss of his eyes and his inability to work," but since said time he has not been so confined and has not been attended by a physician, is not such a departure from the contract, or such a falling short of its provisions, as to destroy the insured's protection under the policies.

The purpose of the provision relative to the insured's being confined to his bed or house was to describe the character and extent of his illness, rather than to prescribe a limitation upon his conduct. To give the provision relative to the insured's confinement to his bed or his house the construction urged by the defendant would be to so magnify the letter as to practically nullify the principal object of the policies. "Not of the letter, but of the spirit: for the letter killeth but the spirit giveth life." 2 Corinthians 3 :6. *Thompson v. Accident Assn.,* 209 N. C., 678, 184 S. E., 695; *Duke v. Assurance Corp.,* 212 N. C., 682, 194 S. E., 91.

The defendant argues that blindness is not such sickness as is contemplated by the policies and therefore plaintiff should not recover. The defendant contracted to pay the plaintiff "weekly sick . . . benefits" . . . "as long as the policy-holder remains totally disabled." Dr. W. P. Speas, an admitted eye expert, testified for the plaintiff: "He (the plaintiff) has a *complication of diseases.* He has an optic atrophy. An optic atrophy is a condition in which the eye nerve is dead, or approaching that. He has an absolute optic atrophy as near as I can tell from my experience and observation. He also has a high degree of myopia, or near sightedness, a very high degree of that, which precludes

his being able to see anything of any size any considerable distance. He has a scar of the cornea. It is supposed to be clear like glass. He has a scarring there which, if everything else were normal, would cut down his vision. At one time when he was there I felt he had increased tension in the left eye. He has this *complication of diseases* any one of which would affect his vision. It is a permanent condition, absolutely. I last saw Vannie (the plaintiff) on the 24th day of this month. His condition is not improved over when I first saw him. The effect of the *disease* of the optic nerve that I have named is that it prevents it from functioning. The optic nerve carries impulses of sight back to the brain, and it stops that function entirely, optic atrophy does. . . . He could not possibly have useful vision in view of what I have seen in his eyes. In my opinion, it will not become better."

Webster's New International Dictionary (1935) says: "Sick" means "affected with disease," and gives "disease" as a synonym of "sickness." Therefore it would seem that his Honor was supported in finding from Dr. Speas' testimony that "the diseases of the eyes is sickness within the terms of the policy, and that the disability of the plaintiff, . . . is the result of said sickness, and that the plaintiff is totally disabled from performing or pursuing any work of a gainful character, due to the diseased condition of his eyes."

The testimony of Dr. Speas, as well as the findings of fact of the court, is in the present tense, "he *has* a complication of diseases," "the diseases of the eye *is* sickness," that the disability *"is* the result" of said sickness, which supports the findings of fact and conclusions of law to the effect that the plaintiff was not only sick on 23 May, 1939, but was still sick at the time of the trial, and was therefore entitled to recover sick benefits from the beginning of his sick disability 23 May, 1939, until the time of trial, 110 weeks.

The judgment of the Superior Court is

Affirmed.