GUY C. EVANS v. TRANSPORTATION INSURANCE COMPANY.

(Filed 20 January, 1967.)

**1. Insurance § 29—**

A policy provision for benefits for continuous confinement within doors will be construed as descriptive of the extent of the illness or injury rather than a limitation upon insured's conduct, and benefits under the clause will not be denied for visitations by insured to his physician, or walks ordered by his physician, or any other purpose not negating the seriousness of his illness and the totality of his disability.

**2. Same—**

 Plaintiff's evidence was to the effect that he suffered a heart attack resulting in total disability and confinement for a period of over a year, that thereafter he continued to follow a strict routine of exercise, rest and medication, but that occasionally he also took automobile rides, went out for lunch at a restaurant, drove himself on short trips, and went to the movies. *Held:* The evidence is insufficient to entitle insured to the benefits provided in the policy for necessary and continuous confinement within doors, or to waiver of premiums for such disability, but only to the benefits provided in the policy for nonconfining illness.

**3. Tender—**

 The refusal of a legally sufficient tender does not extinguish the principal debt or obligation.

APPEAL by plaintiff from *Parker, J.,* January 17, 1966 Civil Session of PITT.

Action on a policy of health and accident insurance.

On October 21, 1952, defendant issued to plaintiff its policy No. 9T 8532, which was renewed annually thereafter. Part IV of the policy, "Monthly Sickness Indemnity," provides:

 "Indemnity will not be paid under this Part for any period of disability during which the Insured is not under the regular care and attendance of a legally qualified physician, surgeon or osteopath other than himself.

 "A. Total Disability and Confinement. When, as the result of sickness and commencing while this policy is in force, the Insured is wholly and continuously disabled and prevented from engaging in each and every occupation or employment, the Company will pay the Monthly Indemnity stated in the Schedule for the period the Insured lives and is so disabled and necessarily and continuously confined within the house. Confinement shall not be terminated by reason of the transportation of the Insured, at the direction of his doctor, to or from a hospital or a doctor's office for necessary treatment. . . .

 "B. Total Disability and Non-Confinement. When, as the result of sickness and commencing while this policy is in force or immediately following a period of total disability for which indemnity is payable under Paragraph A of this Part, the Insured is wholly and continuously disabled and prevented from engaging in each and every occupation or employment although not confined within the house, the Company will pay one-half the Monthly Indemnity stated in the Schedule for the period of such disability not to exceed three consecutive months as the result of any one sickness."

Plaintiff suffered a severe myocardial infarction (heart attack) on May 14, 1962. Since then he has been under the regular care and attendance of a legally qualified physician, and he has not been able to engage in any gainful occupation or employment. Under Part IV-A of its policy, defendant paid to plaintiff the monthly indemnity of $300.00 during the period of May 14, 1962, through June 28, 1963. After that date, however, defendant refused to pay further under Part IV-A. Instead, it tendered to plaintiff $450.00 ($150.00 for three months), the total benefits provided under Part IV-B. Plaintiff refused the tender and, on April 1, 1964, brought this suit to recover benefits under Part IV-A at $300.00 a month for the period from June 28, 1963, through March 31, 1964, a total of $2,720,00. Plaintiff also seeks to recover $312.00, the sum of 1962 and 1963 premiums, which, he alleges, he paid by mistake.

Upon the trial, plaintiff's evidence tended to show: At the time of his heart attack, plaintiff, a traveling salesman, was approximately 60 years old and a resident of Greenville. He owned and supervised two small farms a short distance from Greenville. He now rents these farms "on thirds," and the tenants supervise them. During the period June 28, 1963-March 31, 1964, plaintiff, in accordance with his doctor's orders, followed a strict routine of exercise, rest, and medications. He still follows this routine. In the mornings, he walks a mile at 70 steps a minute and then returns to his home for two hours of bed rest. He can take no exercise more strenuous than a leisurely walk. In the afternoons, he sometimes walks two blocks from his house to the doctor's office or takes a 30-minute stroll to relieve tension. Ordinarily, he spends 20-22 hours out of each 24 within his house. He never goes out in the evenings. Sometimes his wife takes him for a 30 to 40-minute drive, and on occasions they eat lunch at a restaurant. At least once every two weeks, they ride out to the farms just for the drive. Plaintiff goes to the barbershop and to the post office 2-3 times a week. On occasions, he drives himself to these places. Sometimes he goes to the drugstore for his medicine. The doctor permits him to drive his automobile for 30-40 minutes around town. Longer periods are likely to precipitate chest pains or angina pectoris. In September 1964, plaintiff took — and passed — the examination for his driver's license. He owns a cottage on Pamlico Beach, where, upon the advice of his doctor, he spends some time during the summer. At the beach, he follows the same routine as at home. His physician testified that he could go to a movie "if it were the right kind," *i. e.*, one free from excitement.

At the close of plaintiff's evidence, defendant's motion for judgment of nonsuit was allowed, and plaintiff appealed.

*M. E. Cavendish for plaintiff.*
*Rodman & Rodman for defendant.*

SHARP, J.   Defendant concedes that plaintiff was totally and continuously disabled during the period in question and that he was under the regular care of a duly qualified physician. This appeal presents only the question whether, within the meaning of the policy, plaintiff's disability necessarily and continuously confined him within the house.

Except where the contract of insurance specifically defines policy requirements of continuous confinement withindoors, as in *Walsh v. Insurance Co.*, 265 N.C. 634, 144 S.E. 2d 817, this Court has treated such provisions as descriptive of the extent of the illness or injury rather than as a limitation upon insured's conduct. *Glenn v. Insurance Co.*, 220 N.C. 672, 18 S.E. 2d 113; *Duke v. Assurance Corp.*, 212 N.C. 682, 194 S.E. 91; *Thompson v. Accident Association*, 209 N.C. 678, 184 S.E. 695; *Hines v. Casualty Co.*, 172 N.C. 225, 90 S.E. 131. So long as the insured left his home only to visit his physician, to take walks ordered by his doctor, or for some other purpose which does not negate the seriousness of his illness and the totality of his disability, this Court has interpreted continuous confinement clauses liberally in favor of the insured and has allowed "reasonable deviation from the indoors requirement." *Suits v. Insurance Co.*, 249 N.C. 383, 106 S.E. 2d 579.

In *Suits*, the plaintiff, a paraplegic as a result of an automobile accident, was totally disabled and deprived of his earning capacity. He lived at home and was entirely dependant upon his father and mother, not only for his livelihood but also for his bodily needs. Notwithstanding, after attending a rehabilitation center, he was able to operate a specially equipped automobile and, with the use of crutches, braces, and specially fitted shoes, to walk short distances. During 1955-1957, he was enrolled at the University of North Carolina, and, three days a week, he drove to Chapel Hill, a distance of 35 miles from his home. In 1957, he received his M.A. degree in English. He also drove himself to church (where he taught a Sunday-school class), to the barbershop, to the doctor's office, and to nearby towns. Prior to the time that the plaintiff enrolled at the University of North Carolina, the defendant insurance company had paid him monthly benefits under a policy providing for such payments so long as injury or sickness confined him continuously withindoors. Thereafter, the defendant declined to make further payments, and the plaintiff brought suit. In holding that the plaintiff's activities away from home had been "too extensive and too regularly carried on for too long a time" to permit him to qualify

under the continuous confinement clause, Higgins, J., speaking for the Court, said:

> "It (the confinement clause) is an integral part of the contract which the parties made. We cannot revise it. When competent parties contract at arms length upon a lawful subject, as to them the contract is the law of their case.
>
> ". . . The outside activities of the insured in the *Glenn,* the *Duke,* and the *Thompson* cases above referred to were restricted in time, scope, and field, too much so to bear any true resemblance to those carried on by the plaintiff or to constitute a precedent in his favor." *Id.* at 386.

In *Suits,* the insurance policy made no attempt to define continuous confinement withindoors. The policy in the instant case likewise attempts no definition other than to provide that "confinement shall not be terminated by reason of the transportation of the insured, at the direction of his doctor, to or from a hospital or a doctor's office for necessary treatment." This provision merely implanted previous rulings of this Court into the policy. *Duke v. Assurance Corp., supra; Thompson v. Accident Association, supra.* Plaintiff's activities, however, have been so extensive and so prolonged that his case is governed by *Suits v. Insurance Co., supra.*

Defendant's contract with plaintiff does not obligate it to pay him $300.00 unless he is totally disabled *and* continuously confined to the house. For total disability and *non*confinement, defendant agreed to pay only $150.00 a month for a maximum of three months. Defendant is, therefore, obligated to pay plaintiff only under policy provision IV-B. "A bona fide, legally sufficient tender by a debtor, even though refused by the creditor, does not operate to discharge or extinguish the principal debt or obligation. . . ." 52 Am. Jur., Tender § 35 (1944). *Accord, Parker v. Beasley,* 116 N.C. 1, 21 S.E. 955.

Plaintiff's claim for a refund of premiums paid in 1962 and 1963 is governed by the following provision of the policy:

> "Waiver of Premium — Upon due proof that total disability for which indemnity is payable under this policy has continued for six months while this policy is in force, the Company will waive the payment of any premium becoming due during any further continuous period of disability for which indemnity is payable and the policy will remain in force during such further period, subject to all its conditions except as to the payment of premium."

Plaintiff's heart attack occurred on May 4, 1962. The next premium became due November 1, 1962 — three days before the expiration of the six months' waiting period. His continuous confinement had been terminated when the next premium became due on November 1, 1963. Plaintiff, therefore, is not entitled to a refund of premiums paid.

The judgment of nonsuit must be

Affirmed.