WALLACE A. McADAMS v. UNION SECURITY LIFE INSURANCE COMPANY

No. 7728DC590

(Filed 6 June 1978)

1. **Rules of Civil Procedure § 50— directed verdict—party having burden of proof**

   The rule that a trial court cannot direct a verdict in favor of the party having the burden of proof when his right to recover depends upon the credibility of his witnesses did not apply to prohibit a directed verdict for defendant insurer, which had the burden of proof on a contested issue, where

the testimony of defendant's witness tended only to explain and clarify the plaintiff's evidence and not to contradict it.

**2. Insurance § 39— disability insurance—preexisting sickness—arteriosclerotic heart disease with coronary insufficiency**

Arteriosclerotic heart disease with coronary insufficiency constituted a "sickness" within the meaning of a provision excluding disability insurance coverage for any disability "to which a contributing cause directly or indirectly is . . . sickness contracted prior to the beginning date of the individual term of insurance" where the terms "sickness" and "disease" were used synonymously in the policy. Therefore, the trial court properly directed a verdict for defendant insurer in plaintiff's action to recover under the disability policy where plaintiff's evidence showed that he suffered from arteriosclerotic heart disease with coronary insufficiency prior to his coverage under defendant's policy.

APPEAL by plaintiff from *Allen (C. Walter), Judge.* Judgment entered 24 February 1977 in District Court, BUNCOMBE County. Heard in the Court of Appeals 30 March 1978.

This is an action for benefits under a group policy of insurance against disability by accident or sickness. The plaintiff, Wallace A. McAdams, obtained insurance under the policy on 31 October 1973 in connection with his installment purchase of an automobile. The effect of the policy was to provide that the defendant, Union Security Life Insurance Company, would pay an amount equal to the plaintiff's installment payments on the automobile each month in the event the plaintiff became totally disabled and unable to work "as a result of sickness originating during" the period of coverage. Specifically excluded from coverage was any disability "to which a contributing cause directly or indirectly is . . . sickness contracted prior to the beginning date of the individual term of insurance." The individual term of insurance began on 31 October 1973 and was to run for three years. The plaintiff was not required to provide any evidence of insurability.

The plaintiff offered evidence tending to show that he had consulted Dr. Odes Michael in February of 1973 complaining of hoarseness and a sore throat. During the course of a general physical examination at that time, Dr. Michael performed several tests and a general physical examination. He gave the plaintiff medicine in the form of two different types of pills, and told the plaintiff he had an irregularity in his heart. Shortly after 20 February 1973, the plaintiff received a letter from Dr. Michael informing him that his physical examination of 22 January 1973

revealed arteriosclerotic heart disease, coronary insufficiency and chronic bronchitis. The plaintiff testified that between that examination and the time he took out the insurance policy he did not have any more problems with his chest.

During the summer of 1974 the plaintiff was hospitalized. At that time he was continuing the medication prescribed by Dr. Michael in January of 1973. During July of 1975, the plaintiff was again hospitalized for chest pains.

In August of 1975 the plaintiff submitted a claim to the defendant on the disability policy. The proof of claim report which he filed contained an insurance statement, a physician's authorization, an employer's statement and an attending physician's statement of disability. Both the insured's statement signed by the plaintiff and the attending physician's statement of disability signed by Dr. Michael indicated that the plaintiff's disability was arteriosclerotic heart disease with coronary insufficiency first diagnosed and treated on 22 January 1973. Both parties stipulated that each of these documents was admissible and genuine. At the close of the plaintiff's evidence, the defendant moved for a directed verdict in its favor pursuant to G.S. 1A-1, Rule 50. The defendant stated as grounds for the motion that all of the evidence of the plaintiff, taken in the light most favorable to him, showed that there was no question as to the inception of his illness. The trial court denied this motion, and the defendant proceeded to offer evidence.

The defendant's evidence consisted of testimony by Dr. Michael. The defendant's evidence tended to show that Dr. Michael first saw the plaintiff professionally on 18 January 1973. At that time he obtained a medical history from the plaintiff by having him complete a four-page questionnaire. Dr. Michael's impression then was that the plaintiff suffered from arteriosclerotic heart disease with left bundle branch block and cardionegali, which is an enlarged heart, and congestive heart failure. The diagnosis was based on plaintiff's electrocardiogram and chest X-rays, as well as a physical examination.

At Dr. Michael's suggestion, he next saw the plaintiff on 20 February 1973. After that examination, he wrote the plaintiff the letter referred to in the plaintiff's evidence.

Dr. Michael testified that his diagnosis of the plaintiff's condition in January of 1973 and continuing to the present was not merely arteriosclerosis. It was arteriosclerotic heart disease with coronary insufficiency. He testified that this was not the same as generalized arteriosclerosis. On cross-examination, Dr. Michael testified that he would not expect to find arteriosclerotic heart disease with coronary insufficiency present to some degree in a person of middle age.

The defendant offered other evidence through Dr. Michael. As this evidence tended in some respects to contradict the plaintiff's evidence, it will not be set forth or considered in this opinion.

The defendant rested and renewed its motion for a directed verdict in its favor. The plaintiff also moved for a directed verdict in his favor. The trial court denied the plaintiff's motion and granted the motion of the defendant for a directed verdict at the close of all of the evidence. The plaintiff appealed.

*Morris, Golding, Blue & Phillips, by Stephen Kropelnicki, Jr., for plaintiff appellant.*

*Adams, Hendon & Carson, P.A., by Geo. Ward Hendon, for defendant appellee.*

MITCHELL, Judge.

The plaintiff brought forward on appeal only his assignments asserting that the trial court erred in granting the defendant's motion for a directed verdict at the close of all of the evidence and in entering the judgment. He specifically abandoned his assignment relative to the denial of his motion for directed verdict in his favor. We limit our review and opinion to a consideration of those assignments brought forward.

It is elemental that, on a motion by a defendant for a directed verdict, the plaintiff's evidence must be taken as true and all the evidence must be considered in the light most favorable to the plaintiff, giving him the benefit of every reasonable inference to be drawn therefrom. *Farmer v. Chaney,* 292 N.C. 451, 233 S.E. 2d 582 (1977); *Manganello v. Permastone, Inc.,* 291 N.C. 666, 231 S.E. 2d 678 (1977). Any conflict in the

evidence must be resolved in the plaintiff's favor. *Summey v. Cauthen*, 283 N.C. 640, 197 S.E. 2d 549 (1973).

The plaintiff contends that his evidence made out a prima facie case of loss within the coverage of the policy, and that the burden was upon the defendant to prove that it was relieved of liability by an exclusion or limitation of the policy. The plaintiff argues, therefore, that the trial court erred in granting a directed verdict in favor of the defendant, as the defendant was a party having the burden of proof on a contested issue.

[1] In support of this argument, the plaintiff refers us to *Cutts v. Casey*, 278 N.C. 390, 180 S.E. 2d 297 (1971). That case held that a trial court, acting pursuant to G.S. 1A-1, Rule 50, cannot direct a verdict in favor of the party having the burden of proof when his right to recover depends upon the credibility of his witnesses. 278 N.C. at 417, 180 S.E. 2d at 311. No such situation is presented by the case *sub judice*. Here, the defendant was not required to rely upon the credibility of its witness. The defendant's witness, Dr. Michael, did not substantially contradict the plaintiff's evidence, which consisted largely of the testimony of the plaintiff. Rather, Dr. Michael's testimony tended to explain and clarify the plaintiff's testimony and not to vary with that testimony. Thus, the prohibition of *Cutts* is inapplicable to the present facts. *See Kidd v. Early*, 289 N.C. 343, 222 S.E. 2d 392 (1976).

[2] The plaintiff's own testimony, as well as other evidence introduced by him, clearly indicated that he suffered from arteriosclerotic heart disease with coronary insufficiency which was diagnosed and treated no later than February of 1973. His evidence also clearly indicated that he was specifically informed by Dr. Michael no later than February of 1973 that he was afflicted with this specific disease. Additionally, the plaintiff's evidence indicated that the documents submitted in support of his claim under the policy themselves specifically stated that the disease causing his disability had arisen prior to his being brought under the coverage of the defendant's policy. The defendant's evidence, in the form of Dr. Michael's testimony, was not significantly at variance with the plaintiff's evidence and could be considered by the trial court in ruling upon the defendant's motion for a directed verdict. *Hincher v. Hospital Care Asso.*, 248 N.C. 397, 402, 103 S.E. 2d 457, 461 (1958). Although *Hincher* dealt with a motion to nonsuit, the rules regarding directed verdicts

pursuant to Rule 50 are the same as those previously controlling nonsuit. *Younts v. Insurance Co.*, 281 N.C. 582, 189 S.E. 2d 137 (1972); *see also, Clark v. Bodycombe*, 289 N.C. 246, 221 S.E. 2d 506 (1976).

In the instant case it was apparent that the testimony of Dr. Michael for the defendant tended to harmonize with, explain and clarify the plaintiff's testimony without contradicting that testimony. The only legitimate conclusion which could be drawn from the plaintiff's testimony alone or in conjunction with that of the defendant was that the plaintiff suffered from arteriosclerotic heart disease with coronary insufficiency prior to his coverage under the defendant's policy. It is equally unchallengeable that the defendant's disability arose from this disease. If this establishes the defendant's affirmative defense as a matter of law, the directed verdict in favor of the defendant was proper. *Hincher v. Hospital Care Asso.*, 248 N.C. 397, 402, 103 S.E. 2d 457, 461 (1958).

The plaintiff next contends that the established fact of his preexisting arteriosclerotic heart disease with coronary insufficiency did not establish an affirmative defense under the specific exclusion of the policy relied upon by the defendant. That provision of the policy specifically excluded from coverage any disability "to which a contributing cause directly or indirectly is . . . sickness contracted prior to the beginning date of the individual term of insurance." The plaintiff contends that his condition was not a "sickness" as referred to in the policy. He contends that the term "sickness" may not be equated with the term "disease" or similar terms. We do not agree.

Throughout the proof of claim report submitted to the defendant by the plaintiff and introduced into evidence, it is apparent that the two terms are used synonymously. Additionally, the Supreme Court of North Carolina has indicated that the terms "disease" and "sickness" are synonymous absent some indication that the parties intended otherwise. *See, Glenn v. Insurance Co.*, 220 N.C. 672, 676, 18 S.E. 2d 113, 115 (1942). We think, therefore, that the plaintiff's proven preexisting "disease" constituted a preexisting "sickness."

We have recently indicated that whether preexisting arteriorsclerosis is to be viewed as a disease or a normal condi-

tion of aging when recovery is sought under an insurance policy is, in some cases, a question of fact for the jury. *Emanuel v. Insurance Co.*, 35 N.C. App. 435, 242 S.E. 2d 381 (1978). In that case, however, we were faced only with evidence of arteriosclerosis. No such question need be presented to the jury in cases such as the one *sub judice* in which all of the evidence indicates the plaintiff suffered from arteriosclerotic heart disease with coronary insufficiency which caused the disability and existed prior to his coverage by the defendant's policy. We find that the established fact of the plaintiff's preexisting disease was sufficient to establish the truth of the defendant's affirmative defense as a matter of law, and the trial court properly granted the defendant's motion for a directed verdict. *Hincher v. Hospital Care Asso.*, 248 N.C. 397, 402, 103 S.E. 2d 457, 461 (1958).

The plaintiff has also assigned as error the signing and entering of the judgment after the directed verdict by the trial court. This assignment is without merit. When the motion for a directed verdict under Rule 50 was granted, the defendant was entitled to a judgment on the merits unless the court permitted a voluntary dismissal of the action under G.S. 1-1A, Rule 41(a)(2). *Cutts v. Casey*, 278 N.C. 390, 180 S.E. 2d 297 (1971); *Kelly v. Harvester Co.*, 278 N.C. 153, 179 S.E. 2d 396 (1971). As a voluntary dismissal was neither requested nor granted, the trial court's entry of judgment was proper. The judgment of the trial court was without error and is

Affirmed.

Chief Judge BROCK and Judge HEDRICK concur.