RODERICK TODD McIVER AND TERRIE GENTRY, PLAINTIFFS V. JAMES SUGGS SMITH AND FORSYTH COUNTY, DEFENDANTS

No. COA98-1039

(Filed 17 August 1999)

**1. Immunity— summary judgment—county-operated ambulance service—governmental nature of services—not a proprietary function**

The trial court did not err in granting summary judgment in favor of defendants, an ambulance driver and the county operating the ambulance service, based on governmental immunity because: (1) the governmental nature of ambulance service is not altered by the charging of a fee; (2) the fact private companies may run ambulance services similar to this one does not transform it into a proprietary function; (3) an agency limited to the transportation of sick or injured persons to hospitals does not mean it is a public transportation system with a proprietary nature; and (4) governmental-operated ambulance services should be afforded the same consideration given to fire, police, and 911 services activities.

**2. Immunity— summary judgment—county-operated ambulance service—not a complete waiver if purchase insurance**

The trial court did not err in granting summary judgment in favor of defendants, an ambulance driver and the county operating the ambulance service, based on governmental immunity because defendant Forsyth County was insured for only those negligence claims of $250,000 or more, it did not waive its immunity for claims totaling less than $250,000, and plaintiffs indicated the total monetary relief they would be seeking was $73,000.

Appeal by plaintiffs from order entered 31 December 1997 by Judge Lester P. Martin in Forsyth County Superior Court. Heard in the Court of Appeals 28 April 1999.

*Roderick T. McIver for plaintiff-appellants.*

*Womble Carlyle Sandridge & Rice, a Professional Limited Liability Company, by Allan R. Gitter and Alison R. Bost, for defendant-appellees.*

LEWIS, Judge.

Plaintiffs appeal the trial court's granting of defendants' motion for summary judgment based on defendants' qualification for governmental immunity. We affirm.

Defendant James Smith ("Smith"), an employee of Forsyth County, was driving a Forsyth County Emergency Medical Services ("EMS") vehicle on 20 August 1995 in Winston-Salem. While responding to a 911 call he approached the intersection of Cherry Street and Seventh Street, slowed the ambulance, looked both ways, saw no approaching traffic, and proceeded to enter the intersection. The ambulance's emergency lights and siren were on. Plaintiffs entered the intersection with Roderick McIver driving his car. The vehicles collided. Plaintiffs claimed personal injury and property damage as a result of the collision. Defendants requested each plaintiff state the precise amount of monetary damages they were seeking pursuant to Rule 8 of the North Carolina Rules of Civil Procedure. Plaintiffs responded with a total of $73,000.

Defendants filed a motion for summary judgment, asserting governmental immunity, and the trial court granted their motion 26 March 1996. On appeal from that order, this Court reversed in an unpublished opinion because there was insufficient supporting information in the record. At a new trial, defendants again filed a motion for summary judgment 22 October 1997 in Superior Court. The trial court granted this second motion 15 December 1997 and plaintiffs appealed 22 December 1997.

The standard of review for a motion for summary judgment by defendants is whether the evidence, in the light most favorable to plaintiffs, demonstrates that there is no genuine issue of material fact and that defendants are entitled to a judgment as a matter of law. *See, e.g., Coleman v. Rudisill,* 131 N.C. App. 530, 531, 508 S.E.2d 297, 299 (1998). The trial court may also grant a motion for summary judgment if it is shown that the non-moving party cannot survive an affirmative defense. *Roumillat v. Simplistic Enterprises, Inc.,* 331 N.C. 57, 62-63, 414 S.E.2d 339, 341-42 (1992). To affirm the trial court's granting of defendants' motion for summary judgment, defendants must demonstrate that they are entitled to the insurmountable affirmative defense of governmental immunity. *See id. at* 63, 414 S.E.2d at 342.

[1] This is a case of first impression. There is no statutory, case, nor common law in North Carolina that states whether county-operated

ambulance services are entitled to governmental immunity. As such, we will examine the law as it now stands on the issue of governmental immunity as well as the law in other jurisdictions.

In North Carolina the law on governmental immunity is clear. In the absence of some statute that subjects them to liability, the state and its governmental subsidiaries are immune from tort liability when discharging a duty imposed for the public benefit. *See Overcash v. Statesville Bd. of Educ.*, 83 N.C. App. 21, 23, 348 S.E.2d 524, 526 (1986). *See also Steelman v. City of New Bern*, 279 N.C. 589, 592-93, 184 S.E.2d 239, 241-42 (1971); *Moffitt v. Asheville*, 103 N.C. 237, 254-55, 9 S.E. 695, 697 (1889). Like cities, counties have governmental immunity when engaging in activity that is clearly governmental in nature and not proprietary. *Robinson v. Nash County*, 43 N.C. App. 33, 35, 257 S.E.2d 679, 680 (1979). One cannot recover for personal injury against a government entity for negligent acts of agents or servants while they are engaged in government functions. *See Koontz v. City of Winston-Salem*, 280 N.C. 513, 521-22, 186 S.E.2d 897, 903 (1972). *See also Glenn v. Raleigh*, 246 N.C. 469, 473, 98 S.E.2d 913, 916 (1957). However, the county may waive its governmental immunity by purchasing liability insurance for specific claim amounts or certain actions. N.C. Gen. Stat. § 153A-435(a) (1991). This acts as a waiver of immunity "for any act or omission occurring in the exercise of a government function." *Id.* The county may limit its waiver of immunity to injuries specifically covered by the insurance policy and to the amount of the coverage. *See Overcash*, 83 N.C. App. at 22-23, 348 S.E.2d at 526.

Governmental immunity normally precludes recovery for personal injuries caused by negligent acts of the county's agents or servants. *See Koontz*, 280 N.C. at 521, 186 S.E.2d at 903. However, if the county is acting within its authority in the exercise of powers assumed voluntarily for its own advantage, it is liable for the negligence of its officers or agents, even though they may be engaged in work that will enhance the general welfare of the county. *See Moffitt*, 103 N.C. at 254, 9 S.E. at 697.

> On the other hand, where a [county] in exercising the judicial, discretionary or legislative authority, conferred by its charter, or is discharging a duty, imposed solely for the benefit of the public, it incurs no liability for the negligence of its officers, though acting under color of office, unless some statute . . . subjects the corporation to pecuniary responsibility for such negligence.

*Id.* at 254-55, 9 S.E. at 697. In other words, if the governmental entity was acting in a government function, there can be no recovery unless the county waives its governmental immunity; but if the operations were proprietary rather than governmental, the county is not protected. *See Glenn,* 246 N.C. at 473, 98 S.E.2d at 916. Governmental immunity depends on the nature of the power the entity is exercising.

Plaintiffs contend that the Forsyth County ambulance service is not shielded by governmental immunity because it qualifies as a proprietary function for four reasons. First, ambulance service was historically provided by private companies and frequently by funeral homes. Second, Forsyth County charged for the service. Third, Forsyth County's ambulance service was providing a service that a private individual, corporation or company could provide. Fourth, the ambulance service constituted a public enterprise.

Historically, government functions are those activities performed by the government which are not ordinarily performed by private corporations. *See Casey v. Wake County,* 45 N.C. App. 522, 523, 263 S.E.2d 360, 362 (1980). "Providing for the health and welfare of the citizens of the county is a legitimate and traditional function of county government." *Id.* at 524, 263 S.E.2d at 361. Since the responsibility for preserving the health and welfare of citizens is a traditional function of government, it follows that the county may operate government functions that ensure the health and welfare of its citizens. *See McCombs v. City of Asheboro,* 6 N.C. App. 234, 240, 170 S.E.2d 169, 173-174 (1969). An ambulance service does just this. It is also noteworthy that the legislature granted counties the power to operate ambulance services in all or part of their respective jurisdictions. N.C. Gen. Stat. § 153A-250(b) (1991). The focus is therefore on the nature of the service itself, not the provider of the service.

Plaintiffs contend that one of the major tests in labeling a government activity proprietary is whether a monetary fee is involved. They cite *Sides v. Hospital,* 287 N.C. 14, 213 S.E.2d 297 (1973), for the blanket proposition that when the county charges for its services the activity is proprietary, whether or not the operation is profitable. *Id.* at 23, 213 S.E.2d at 303. This is an erroneous statement of the law. In *Sides* our Supreme Court noted many cases in which the activities that were held to be proprietary in nature involved a monetary charge of some type, but indicated that the basis for the holding in each case was *not dependent* on the profit motive. *Id.* at 22-23, 213 S.E.2d at 303. The main issue is whether the activity is still governmental and

not proprietary in nature. *See Hickman v. Fuqua*, 108 N.C. App. 80, 84, 422 S.E.2d 449, 452 (1992).

The fact that Forsyth County charged a fee for its ambulance service does not alone make it a proprietary operation. *See id. See also McCombs*, 6 N.C. App. at 241, 170 S.E.2d at 174; *James v. Charlotte*, 183 N.C. 630, 632, 112 S.E. 423, 424 (1922). The test to determine if an activity is governmental in nature is "whether the act is for the common good of all without the element of . . . pecuniary profit." *McCombs*, 6 N.C. App. at 241, 170 S.E.2d at 174. As determined above, the establishment of the ambulance service is a government function. Under the provisions of N.C.G.S. § 153A-250(b), Forsyth County has the authority to charge a fee for the ambulance service. While it charged a flat fee of $225 for the service, Forsyth County operated the ambulance service at losses averaging nearly two million dollars annually over a ten year span. The governmental nature of the ambulance service, to provide for the health and care of its citizens, is not altered by the charging of a fee; the fee is assessed only to help defray the costs of operating the system.

Plaintiffs next argue that the Forsyth County ambulance service is a proprietary activity because it is providing a service that any private individual or corporation could provide. Activities which can be performed *only* by a government agency are shielded from liability, while activities that can be performed by either private persons or government agencies may be shielded, depending on the nature of the activity. *See Britt v. Wilmington*, 236 N.C. 446, 451, 73 S.E.2d 289, 293 (1952). This interpretation of *Britt* is the only way to reconcile its holding with other cases. For example, children may be educated by either public schools or private schools, but public schools are still granted governmental immunity. *See Hallman v. Charlotte-Mecklenburg Bd. of Educ.*, 124 N.C. App. 435, 437, 477 S.E.2d 179, 180 (1996). Private citizens may haul off and dispose of leaves just like government employees, but government leaf haulers are afforded governmental immunity. *See Blackwelder v. City of Winston-Salem*, 332 N.C. 319, 323, 420 S.E.2d 432, 435 (1992). Because private companies may run ambulance services similar to Forsyth County's does not transform the county's into a proprietary function.

Finally, plaintiffs argue that the ambulance service is actually a form of public transportation as listed in N.C. Gen. Stat. § 153A-274 (1991). Plaintiffs contend that since ambulances transport members of the general public they are means of public transportation. As a

means of public transportation, plaintiffs contend, the ambulance service is also a public enterprise. *Id.* As a public enterprise, the ambulance service could not be shielded from liability because public enterprises are proprietary by nature. *See Gregory v. City of Kings Mountain,* 117 N.C. App. 99, 104, 450 S.E.2d 349, 353 (1994).

As defined by N.C. Gen. Stat. § 160A-601 (1994), public transportation is

> transportation of passengers whether or not for hire by any means of conveyance, including but not limited to a street or elevated railway or guideway, subway, motor vehicle or motor bus, carpool or vanpool, either publicly or privately owned and operated, *holding itself out to the general public for the transportation of persons* within or working within the territorial jurisdiction of the Authority . . .

*Id.* (emphasis added) Clearly, public transportation does not include an agency limited to the transportation of sick or injured persons to hospitals. To accept plaintiffs' argument would mean that a person could call 911 to get a ride to supper in an ambulance, or hail a ambulance as if it were a taxicab. If plaintiffs' argument were true, the county would not be able to limit its liability for ambulance services by the purchase of insurance, as it can under N.C. Gen. Stat. § 153A-435(b) (1991). Or all public transportation systems could be shielded from liability under governmental immunity, which they cannot do under current law. *See Gregory,* 117 N.C. App. at 104, 450 S.E.2d at 353. Plaintiffs' interpretation of the statutory definition of a public transportation system under N.C.G.S. § 153A-435(b) renders another provision of the same statute meaningless, which must not occur. *See Brown v. Brown,* 112 N.C. App. 15, 21, 434 S.E.2d 873, 878 (1993).

We hold, therefore, that this county-operated ambulance service is a governmental activity shielded from liability by governmental immunity. As concluded above, providing for the health and care of its citizens is an historically governmental function, and ambulance care does just this. The fee involved is permitted by statute and not levied to advance a proprietary interest.

Other jurisdictions have also extended governmental immunity to ambulance services. The District of Columbia has held that government-provided ambulance services were akin to police and fire protection, regardless of user fees charged. *Wanzer v. District of*

*Columbia*, 580 A.2d 127 (D.C. App. 1990). In a wrongful death suit brought against the District, the court held that a government-operated ambulance service is similar to police or fire services in that its activity, by nature, is to protect the health, safety and general welfare of its citizens. *Id.* at 130 (citing numerous other cases). These services are all interconnected and vital to a community's health and safety. *Id.* The user fee did not make ambulance service distinguishable because the fee was designed only to generate revenue to offset the cost of maintaining the service. *Id.* at 131. Therefore, government-operated ambulance services should be afforded the same consideration given to fire and police activities. *See id. See also Buell v. Oakland Fire Protection District Bd.*, 605 N.E.2d 618 (Ill. App. 1992); *Pawlak v. Redox Corp.*, 453 N.W.2d 304 (Mich. App. 1990); *Mejia v. City of San Antonio*, 759 S.W.2d 198 (Tex. App.—San Antonio 1988); *King v. Williams*, 449 N.E.2d 452 (Ohio 1983).

By holding that government-operated ambulance services are shielded by governmental immunity, we are following a strong line of case law from other jurisdictions. We are also following similar decisions in our own jurisdiction. Other emergency care providers have been afforded the defense of governmental immunity. Firemen and 911 systems have been afforded governmental immunity from negligence claims because both activities fall under the definition of governmental activities. *Davis v. Messer*, 119 N.C. App. 44, 52, 457 S.E.2d 902, 907 (1995). Police officers have been afforded the defense because they too are functioning under the definition of governmental activities. *Coleman v. Cooper*, 89 N.C. App. 188, 192, 366 S.E.2d 2, 5, *disc. review denied*, 322 N.C. 834, 371 S.E.2d 275 (1988). Government-operated ambulance services, like fire, police and 911 services, serve the health, safety and well-being of citizens. The protection of governmental immunity should be extended to protect government-operated ambulance services as well.

We acknowledge that the modern tendency is to restrict rather than expand the application of governmental immunity. *See Casey*, 45 N.C. App. at 523, 263 S.E.2d at 361. However, we are of the opinion that the operation of government-operated ambulance services is clearly a government function that should have immunity.

[2] Plaintiffs also contend that the trial court's granting of defendants' motion for summary judgment was in error because the actual amount of damages is a question for the jury to decide. In response to defendants' motion pursuant to Rule 8(a)(2) of the North Carolina Rules of Civil Procedure, plaintiffs indicated that the total monetary

**McIVER v. SMITH**

[134 N.C. App. 583 (1999)]

relief they would be seeking was $73,000. Defendant Forsyth County was insured for only those negligence claims of $250,000 or more; it did not waive its immunity for claims totaling less than $250,000. N.C.G.S. § 153A-435(b) (1991). *See also Hallman*, 124 N.C. App. at 438, 477 S.E.2d at 181; *Overcash*, 83 N.C. App. at 25, 348 S.E.2d at 527. Since the amount plaintiffs were seeking was less than the insurance minimum for liability, Forsyth County had not waived its governmental immunity. *See Hallman*, 124 N.C. App at 438, 477 S.E.2d at 181. The filing of a motion under Rule 8(a)(2), in essence, erects a hurdle to overcome in negligence cases where there is an insurance policy minimum to reach before liability is waived. *Id.* Here, plaintiffs could not clear that hurdle.

Plaintiffs' final issue on appeal is whether the trial court erred in granting defendants' motion for summary judgment because Forsyth County held liability insurance for damages in negligent acts in excess of $250,000 and this did not act as a complete bar to plaintiffs' claim. Plaintiffs' contend that, at best, the insurance policy may only mitigate defendants' damages.

The purchasing of liability insurance does not serve as a complete waiver of governmental immunity. *See Overcash*, 83 N.C. App. at 23, 348 S.E.2d at 526. Purchasing liability insurance waives governmental immunity only as provided. *See Hallman*, 124 N.C. App. at 438, 477 S.E.2d at 181. In this case, defendant county has waived its governmental immunity for negligence claims totaling $250,000 or more. As established above, plaintiffs could not recover $250,000 as they never claimed as much. As such, Forsyth County was immune from suit and the trial court properly granted the motion for summary judgment. *See id.*

Defendants have established the defense of governmental immunity in this case. Accordingly, the trial court did not err in granting defendants' motion for summary judgment.

Affirmed.

Judges TIMMONS-GOODSON and HORTON concur.