ANGELA DAWES, Administratrix of the Estate of EFFIE HENDRICKS, Plaintiff v. NASH COUNTY and NASH COUNTY EMERGENCY MEDICAL SERVICES, a Division of Nash County, Defendants

No. COA01-85

(Filed 19 February 2002)

**Immunity— sovereign—medical malpractice—county ambulance service**

The trial court did not err in a medical malpractice action by granting summary judgment in favor of defendant county and its emergency medical service based on the defense of sovereign immunity, because: (1) county-operated ambulance service is a governmental activity shielded from liability by governmental immunity; and (2) the county has not waived governmental immunity since the exclusionary clause in its insurance policy operates to remove from coverage all claims against the county arising out of the rendering of medical services and merely retains coverage for the personal liability of emergency medical technicians employed by the county.

Judge GREENE dissenting.

Appeal by plaintiff from order entered 2 November 2000 by Judge Quentin T. Sumner in Nash County Superior Court. Heard in the Court of Appeals 27 November 2001.

*Duffus & Melvin, P.A., by R. Bailey Melvin, for plaintiff-appellant.*

*Womble Carlyle Sandridge & Rice, a Professional Limited Liability Company, by Burley B. Mitchell, Jr. and Mark A. Davis, for defendant-appellees.*

CAMPBELL, Judge.

Plaintiff appeals the trial court's granting of defendants' motion for summary judgment based on defendants' qualification for sovereign (hereinafter, "governmental") immunity. We affirm.

DAWES v. NASH CTY.

[148 N.C. App. 641 (2002)]

On 30 May 2000, Angela Dawes, as administratrix of the estate of Effie Hendricks, filed a medical malpractice action against defendant Nash County EMS, a county-operated ambulance service, based on the alleged negligence of paramedics and emergency medical technicians ("EMTs") employed by Nash County EMS. Specifically, Plaintiff alleged that Nash County EMS was negligent in the following respects:

(a) The paramedics who arrived on the scene failed to supply Ms. Hendricks with supplemental oxygen between 3:34 p.m. and 3:48 p.m.

(b) The Valium, which was given to Ms. Hendricks, was given in too small of a dose to have the desired effect of helping the paramedics intubate Ms. Hendricks.

(c) The paramedics made repeated attempts at intubation which greatly delayed Ms. Hendricks' arrival at Nash General Hospital.

(d) Defendant's employees who cared for and treated Ms. Hendricks failed to exercise reasonable and ordinary care and diligence in the use of their skill and the application of their knowledge to Ms. Hendricks' case.

(e) Defendant's employees who cared for and treated Ms. Hendricks failed to exercise their best judgment in the treatment and care of Ms. Hendricks.

(f) Defendant's employees who cared for and treated Ms. Hendricks failed to possess the required degree of learning, skill and ability necessary to the practice of their profession which others similarly situated normally possess.

(g) Defendant was negligent in such other respects as may be shown at trial.

Nash County EMS filed an answer denying the essential allegations of the complaint and asserting, *inter alia*, the defenses of governmental immunity, lack of subject matter jurisdiction, and lack of personal jurisdiction. Plaintiff thereafter amended its complaint to add Nash County as a named defendant. Nash County and Nash County EMS ("Defendants") filed an answer to Plaintiff's amended complaint asserting many of the same defenses that were asserted in Nash County EMS' original answer, including governmental immunity.

On 19 September 2000, Defendants filed a motion for summary judgment based on the doctrine of governmental immunity. In support of their motion, Defendants submitted an affidavit by Lynne Anderson, Finance Officer of Nash County, stating that the only liability insurance policy in effect for Defendants at the time of Defendants' alleged negligence was an insurance policy issued to Nash County by the North Carolina Counties and Property Insurance Pool Fund ("the Policy"). Defendants also submitted a copy of the Policy with their motion for summary judgment.

On that same day, Nash County EMS moved for judgment on the pleadings pursuant to N.C. R. Civ. P. 12(c) on the ground that it was not an entity capable of being sued. Both of Defendants' motions were granted by order entered 2 November 2000. Plaintiff appealed, assigning error to the trial court's ruling on both motions. However, Plaintiff presents no argument in its brief against the trial court's grant of judgment on the pleadings in favor of Nash County EMS. Thus, the only issue on appeal is whether Nash County is entitled to summary judgment based on governmental immunity.

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to judgment as a matter of law." N.C. R. Civ. P. 56(c)(2000). Summary judgment may also be granted when the non-moving party cannot survive an affirmative defense. *McIver v. Smith*, 134 N.C. App. 583, 584, 518 S.E.2d 522, 524 (1999). Sovereign immunity is such an affirmative defense. *Id.* "To affirm the trial court's granting of [D]efendants' motion for summary judgment, [Nash County] must demonstrate that [it is] entitled to the insurmountable affirmative defense of governmental immunity." *Id.*

"In North Carolina the law on governmental immunity is clear." *Id.* at 585, 518 S.E.2d at 524. In the absence of some statute that subjects them to liability, the State, its municipalities, and the officers and employees thereof sued in their official capacities, are shielded from tort liability when discharging or performing a governmental function. *See id.; Houpe v. City of Statesville*, 128 N.C. App. 334, 340, 497 S.E.2d 82, 87 (1998). "Like cities, counties have governmental immunity when engaging in activity that is clearly governmental in nature and not proprietary." *McIver*, 134 N.C. App. at 585, 518 S.E.2d at 524. This Court has previously held that "county-operated am-

bulance service is a governmental activity shielded from liability by governmental immunity." *Id.* at 588, 518 S.E.2d at 526. Thus, Nash County would be entitled to governmental immunity from Plaintiff's claim, unless Nash County has in some way waived its governmental immunity.

Pursuant to N.C. Gen. Stat. § 153A-435, a county may waive its governmental immunity for tort actions by the purchase of liability insurance for certain actions and specific claim amounts. N.C.G.S. § 153A-435(a) states:

> A county may contract to insure itself and any of its officers, agents, or employees against liability for wrongful death or negligent or intentional damage to person or property or against absolute liability for damage to person or property caused by an act or omission of the county or of any of its officers, agents, or employees when acting within the scope of their authority and the course of their employment. The board of commissioners shall determine what liabilities and what officers, agents, and employees shall be covered by any insurance purchased pursuant to this subsection.
>
> Purchase of insurance pursuant to this subsection waives the county's governmental immunity, to the extent of insurance coverage, for any act or omission occurring in the exercise of a governmental function. Participation in a local government risk pool pursuant to Article 39 of General Statute Chapter 58 shall be deemed to be the purchase of insurance for the purposes of this section . . . .

N.C. Gen. Stat. § 153A-435(a) (2000). Thus, pursuant to N.C.G.S. § 153A-435(a), a county may waive its governmental immunity for tort liability by purchasing liability insurance, but only to the extent that the county is indemnified by the insurance contract for the acts alleged. *Davis v. Messer*, 119 N.C. App. 44, 61-62, 457 S.E.2d 902, 913 (1995) (citation omitted). Therefore, Plaintiff's action in the instant case is barred by governmental immunity unless Nash County was covered by an insurance policy on the date of the alleged negligence which provided coverage for the claim asserted by Plaintiff.

In the instant case, it is undisputed that Nash County was covered by the Policy at the time of the alleged negligence. Section II of the Policy, which provides "General Liability Coverage," states:

DAWES v. NASH CTY.

[148 N.C. App. 641 (2002)]

A. Coverage Agreement

The Fund agrees, subject to the limitations, terms, and conditions hereunder mentioned:

1. to pay on behalf of the Participant all sums which the Participant shall be obligated to pay by reason of the liability imposed upon the Participant by law or assumed by the Participant under contract or agreement for damages on account of Personal Injuries, including death at any time resulting there-from, suffered or alleged to have been suffered by any person or persons (excepting employees of the Participant injured in the course of their employment),

and/or damage to or destruction of property or the loss of use thereof arising out of any Occurrence from any cause other than as covered by Section III (Auto) Section IV (Crime) and Section V (Law Enforcement) of the Contract,

including, but not limited to, Products Liability and/or Completed Operations, Host Liquor Liability, Incidental Malpractice, broad form Property Damage liability and employee benefits liability;

. . . .

Under Section II of the Policy, the term "Incidental Malpractice"

means emergency professional medical services rendered or which should have been rendered to any person or persons (excepting employees of the Participant injured in the course of their employment) by any duly qualified medical practitioner (except any physician, radiologist, osteopath, dentist, pharma-cist, medical resident or student, or any individual licensed to practice medicine), nurses, or Technicians employed by or acting on behalf of the Participant. Professional medical services shall include medical, surgical, dental, x-ray, or nursing services, or food and beverages in connection with these services; or drugs or medical, surgical, or dental supplies, or appliances.

Included within Incidental Malpractice coverage is coverage for any employee while acting independent of that person's activities as the Participant's employee or acting as a volunteer with another emergency unit or organization but only when the person encounters the scene of an accident or medical emergency requiring sudden action.

The term "Technician" is defined as "a certified first responder, certified emergency medical technician, certified intravenous technician, certified paramedic, or ambulance driver." Plaintiff contends that these provisions and definitions cover the action in the instant case—a wrongful death action based on the negligence of paramedics and EMTs in providing emergency professional medical services.

However, Section II of the Policy contains certain enumerated exclusions from coverage, including the following:

E. Exclusions Applicable to General Liability

This coverage does not apply to any of the following:

. . . .

18. Hospital and Health Clinic Professional Liability

To Personal Injury to any person arising out of the rendering of or failure to render any of the following professional services:

a. medical, surgical, dental, or nursing treatment to such person or the person inflicting the injury including the furnishing of food or beverages in connection therewith; or

b. furnishing or dispensing of drugs or medical, dental, or surgical supplies or appliances; or

c. handling of or performing post-mortem examinations on human bodies; or

d. service by any person as a member of a formal accreditation or similar professional board or committee participant, or as a person charged with the duty of executing directives of any such board or committee.

** **However, this exclusion shall not apply to liability of county employed or county volunteer Emergency Medical Technicians.**

(Emphasis in original).

Nash County contends that this exclusionary clause removes from coverage all claims arising out of Nash County's rendering of professional medical services to members of the public, but the exception to the exclusion (**) grants back coverage for personal liability claims brought against county employed EMTs in their individual capacity. Stated differently, the Policy provides coverage for the

DAWES v. NASH CTY.

[148 N.C. App. 641 (2002)]

personal liability of county employed EMTs sued in their individual capacity, while excluding from coverage Nash County's liability for suits against EMTs in their official capacity, as well as suits against Nash County itself for injuries arising out of the rendering of medical services by county employed EMTs. Nash County argues that its interpretation of the exclusionary clause is consistent with the framework of governmental immunity in North Carolina, because counties, and their agents and employees sued in their official capacities, are already protected from tort liability arising out of the provision of ambulance service to the public by operation of the doctrine of governmental immunity, whereas governmental immunity does not apply to protect governmental employees sued in their individual capacities from personal liability. *See Warren v. Guilford County*, 129 N.C. App. 836, 838, 500 S.E.2d 470, 472 (1998). Plaintiff counters by arguing that the Policy specifically covers the acts for which Plaintiff is seeking to recover.

In determining whether Nash County has waived its governmental immunity in the instant case, we keep in mind the general rule that "[w]aiver of sovereign immunity may not be lightly inferred and State statutes waiving this immunity, being in derogation of the sovereign right to immunity, must be strictly construed." *Guthrie v. State Ports Authority*, 307 N.C. 522, 537-38, 299 S.E.2d 618, 627 (1983). We also reiterate that N.C.G.S. § 153A-435(a) plainly states that a county's waiver of governmental immunity only extends "to the extent of insurance coverage." N.C.G.S. § 153A-435(a).

In determining whether the Policy covers the claim asserted by Plaintiff, we likewise keep in mind certain general principles of insurance policy interpretation. When the language in a policy provision is clear and unambiguous, it will be accorded its plain meaning. *Houpe*, 128 N.C. App. at 342, 497 S.E.2d at 88 (citing *Walsh v. Insurance Co.*, 265 N.C. 634, 639, 144 S.E.2d 817, 820 (1965)). However, when language is subject to more than one interpretation, a policy provision is to be liberally construed so as to afford coverage whenever possible by reasonable construction. *State Capital Ins. Co. v. Nationwide Mutual Ins. Co.*, 318 N.C. 534, 538, 350 S.E.2d 66, 68 (1986). Further, exclusionary clauses are not favored in the law and will be construed against the insurer if ambiguous. *Id.*

Applying these general principles to the instant case, we agree with Nash County that the exclusionary clause operates to remove from coverage all claims against Nash County arising out of the ren-

dering of medical services, but the exception to the exclusionary clause operates to retain coverage for the personal liability of EMTs employed by Nash County. We conclude that the exception to the exclusionary clause is not ambiguous, in that it expressly states that the exclusion shall not apply to the "liability" of county employed EMTs. By its terms, the exception only applies to the personal liability of county employed EMTs, and not to the liability of Nash County arising out of the provision of medical services by its EMTs.[1] Further, the exclusionary clause unambiguously removes from coverage all claims against Nash County arising out of the provision of medical services by EMTs. Thus, having found no ambiguity in the exclusionary clause or its exception, and keeping in mind the general rule that waiver of governmental immunity is not to be lightly inferred, we conclude that the trial court was correct in its conclusion that the Policy does not cover the acts complained of by Plaintiff, and that Nash County is entitled to governmental immunity as a defense to Plaintiff's suit.

Affirmed.

Judge McCULLOUGH concurs.

Judge GREENE dissents in a separate opinion.

GREENE, Judge, dissenting.

As I believe the trial court erred in granting Defendants' motion for summary judgment based on the doctrine of governmental immunity, I dissent.

When the language used in a provision of an insurance policy is clear and unambiguous, it will be accorded its plain meaning. *Walsh v. Ins. Co.*, 265 N.C. 634, 639, 144 S.E.2d 817, 820 (1965).

---

1. The only way in which the individual EMTs employed by Nash County can be found personally liable is if they are sued in their individual capacity. Suits against governmental employees in their official capacity do not lead to "liability" against the individual governmental employee. *See Meyer v. Walls*, 347 N.C. 97, 110, 489 S.E.2d 880, 887 (1997) ("[a] suit against a defendant in his individual capacity means that the plaintiff seeks recovery from the defendant directly; a suit against a defendant in his official capacity means that the plaintiff seeks recovery from the entity of which the public servant defendant is an agent"); *see also Moore v. City of Creedmoor*, 345 N.C. 356, 367, 481 S.E.2d 14, 21 (1997) (holding that claims against the City of Creedmoor police chief and a member of the City of Creedmoor Board of Commissioners in their official capacities were merely another way of bringing suit against the City of Creedmoor).

In this case, Defendants' insurance policy excludes coverage for "[p]ersonal injury to any person arising out of the rendering of . . . any . . . medical . . . treatment" but states unambiguously that "this exclusion shall not apply to liability of county employed or county volunteer Emergency Medical Technicians [(EMTs)]." The policy contains no language from which one could infer, as Defendants contend, that the EMT exception to the exclusion of coverage applies only to an EMT's personal liability. As such, the policy provision should be accorded its plain meaning of providing coverage for personal injuries arising out of the medical treatment provided by Defendants' EMTs.

Even if the term "liability" were ambiguous, it would have to be "construed liberally so as to provide coverage[] whenever possible by reasonable construction." *State Capital Ins. Co. v. Nationwide Mut. Ins. Co.*, 318 N.C. 534, 538, 350 S.E.2d 66, 68 (1986). It is reasonable to construe the term "liability" as including an individual's personal liability as well as liabilities incurred in an individual's official capacity. Consequently, I believe the trial court erred in finding Defendants were shielded by governmental immunity and summary judgment should therefore be reversed.