**TOWN OF SANDY CREEK v. COAST CONTR'G, INC.**

[224 N.C. App. 537 (2012)]

THE TOWN OF SANDY CREEK, Plaintiff

v.

EAST COAST CONTRACTING, INC., MICHAEL D. HOBBS, ENGINEERING SERVICES, PA, CHARLES DAVID DICKENSON, TODD S. STEELE AND RLI INSURANCE COMPANY, Defendants

And

EAST COAST CONTRACTING, INC., Third-Party Plaintiff

v.

THE CITY OF NORTHWEST, Third-Party Defendant

No. COA12-561

Filed 18 December 2012

**Immunity—governmental immunity—proprietary function**

The trial court did not err in a breach of contract, negligence, and indemnity and contribution case by denying third-party defendant town's motion to dismiss the negligence claim based on governmental immunity. Defendant town was involved in a proprietary function while handling its business relationship with third-party plaintiff and thus was not entitled to immunity.

Appeal by third-party defendant from order filed 13 February 2012 by Judge Ola M. Lewis in Brunswick County Superior Court. Heard in the Court of Appeals 11 October 2012.

*Smith Parsons, by Steven L. Smith and Matthew E. Orso, for third-party plaintiff appellee.*

*Crossley McIntosh Collier Hanley & Edes, PLLC, by Justin K. Humphries and Clay Allen Collier, for third-party defendant appellant.*

McCULLOUGH, Judge.

The City of Northwest ("Northwest"), appeals from the trial court's denial of its motion to dismiss East Coast Contracting, Inc.'s ("ECC") third-party complaint. For the following reasons, we affirm the denial of Northwest's motion on the limited basis of governmental immunity.

I. Background

This case began 9 September 2010 when The Town of Sandy Creek ("Sandy Creek") filed suit against ECC, Engineering Services,

PA ("ES"), and individuals seeking recovery for damages to Sandy Creek roads allegedly caused by ECC while ECC was constructing a sewer system for Northwest. Sandy Creek's complaint alleged that Sandy Creek and Northwest discussed plans for a sanitary sewer system for their respective municipalities prior to November 2007. Thereafter, Northwest contracted with ES and ECC to design and construct the sewer system. Sandy Creek, who alleges to be a third-party beneficiary to the contracts, further alleged that they incurred damages as a result of the sewer system and that the "damages were caused by deficiencies and defects in the design, drawings, engineering, supervision, specifications, final plans, planning, coordination and workmanship provided by ES" and that ECC's "work deviated from the standard of care such that they breached their duties to [Sandy Creek]."

With Sandy Creek's original suit pending, ECC filed a third-party complaint against Northwest on 12 November 2010 alleging breach of contract, negligence, and indemnity and contribution. Northwest then filed a Rule 12(b)(6) motion to dismiss on 14 February 2011. Northwest's motion came on for hearing at the 9 December 2011 Civil Session of Brunswick County Superior Court, the Honorable Ola M. Lewis presiding. The trial court filed an order on 13 February 2012 denying Northwest's motion to dismiss.

Northwest now appeals the order upon the trial court's Rule 54(b) certification and the stay of ECC's third-party claims.

## II. Analysis

On appeal, Northwest contends that the trial court erred by denying its motion to dismiss ECC's third-party claims. "[A] motion to dismiss under N.C. R. Civ. P. 12(b)(6) tests the legal sufficiency of the complaint." *Stanback v. Stanback*, 297 N.C. 181, 185, 254 S.E.2d 611, 615 (1979). On appeal, "[t]his Court must conduct a *de novo* review of the pleadings to determine their legal sufficiency and to determine whether the trial court's ruling on the motion to dismiss was correct." *Leary v. N.C. Forest Prods., Inc.*, 157 N.C. App. 396, 400, 580 S.E.2d 1, 4, *aff'd per curiam*, 357 N.C. 567, 597 S.E.2d 673 (2003). "In ruling on the motion the allegations of the complaint must be viewed as admitted, and on that basis the court must determine as a matter of law whether the allegations state a claim for which relief may be granted." *Stanback*, 297 N.C. at 185, 254 S.E.2d at 615.

## Appealability

"Generally, there is no right of immediate appeal from interlocutory orders and judgments." *Goldston v. American Motors Corp.*, 326 N.C. 723, 725, 392 S.E.2d 735, 736 (1990). "An interlocutory order is one made during the pendency of an action, which does not dispose of the case, but leaves it for further action by the trial court in order to settle and determine the entire controversy." *Veazey v. Durham*, 231 N.C. 357, 362, 57 S.E.2d 377, 381 (1950). An order denying a motion to dismiss is therefore an interlocutory order and not generally immediately appealable.

However,

> immediate appeal of interlocutory orders and judgments is available in at least two instances. First, immediate review is available when the trial court enters a final judgment as to one or more, but fewer than all, claims or parties and certifies there is no just reason for delay. . . . Second, immediate appeal is available from an interlocutory order or judgment which affects a "substantial right."

*Sharpe v. Worland*, 351 N.C. 159, 161-62, 522 S.E.2d 577, 579 (1999) (citations omitted). " '[T]his Court has repeatedly held that appeals raising issues of governmental or sovereign immunity affect a substantial right sufficient to warrant immediate appellate review.' " *Reid v. Town of Madison*, 137 N.C. App. 168, 170, 527 S.E.2d 87, 89 (2000) (quoting *Price v. Davis*, 132 N.C. App. 556, 558-59, 512 S.E.2d 783, 785 (1999) (citations omitted)).

In the present case, ECC asserted claims for breach of contract, negligence, and indemnity and contribution against Northwest. Upon Northwest's Rule 12(b)(6) motion to dismiss ECC's claims, the trial court refused to dismiss the case. Yet, by the same order denying dismissal, the trial court certified the issue of immunity for appeal, stating "[i]nasmuch as the question of whether the Third-Party Complaint is barred by governmental immunity affects substantial rights of Northwest so as to present no just reason for delay, . . . this matter is certified pursuant to N.C.R.C.P. Rule 54(b) for immediate appeal." Thus, to the extent it is alleged that governmental immunity bars ECC's negligence claim, we review the interlocutory order denying dismissal.

Despite conceding that ECC's breach of contract claim is not barred by governmental immunity, Northwest requests that we review the entire case in order to prevent piecemeal litigation. We decline Northwest's request. Where there is no substantial right at stake as a result of the trial court's denial of Northwest's motion to dismiss ECC's breach of contract claim and where the trial court only certified the issue of governmental immunity for appeal, we limit our scope of review as we have done in previous cases. *See, e.g., Clayton v. Branson,* 153 N.C. App. 488, 570 S.E.2d 253 (2002); *Dempsey v. Halford,* 183 N.C. App. 637, 645 S.E.2d 201 (2007). Thus, the sole issue on appeal is whether the trial court erred in denying Northwest's motion to dismiss ECC's negligence claim because Northwest is entitled to governmental immunity.

## Governmental Immunity

"In North Carolina the law on governmental immunity is clear. In the absence of some statute that subjects them to liability, the state and its governmental subsidiaries are immune from tort liability when discharging a duty imposed for the public benefit." *McIver v. Smith,* 134 N.C. App. 583, 585, 518 S.E.2d 522, 524 (1999).

In this case, Northwest first argues that it is entitled to governmental immunity because ECC failed to plead statutory authorization to sue the city and failed to plead waiver of immunity. Thus, citing *Morrison-Tiffin v. Hampton,* 117 N.C. App. 494, 451 S.E.2d 650 (1995), Northwest concludes that failure to allege waiver is a failure to plead a tort against a North Carolina municipality and the claims should be dismissed. This argument is misplaced.

Waiver of governmental immunity need only be pled where a municipal corporation is acting in a governmental capacity. Where a municipal corporation is acting in a proprietary manner, it is not entitled to governmental immunity and waiver need not be pled. *See McIver,* 134 N.C. App. at 586, 518 S.E.2d at 525 ("[I]f the governmental entity was acting in a government function, there can be no recovery unless the county waives its governmental immunity; but if the operations were proprietary rather than governmental, the county is not protected."). Therefore, "[i]n deciding whether a governmental entity may claim immunity from suit, we must first determine whether the nature of the complained-of act is proprietary or governmental." *Stephenson v. Town of Garner,* 136 N.C. App. 444, 454, 524 S.E.2d 608, 615 (2000) (citing *Rich v. City of Goldsboro,* 282 N.C. 383, 385, 192 S.E.2d 824, 826 (1972)).

**TOWN OF SANDY CREEK v. COAST CONTR'G, INC.**

[224 N.C. App. 537 (2012)]

"Our courts have long noted that drawing the line between municipal operations which are proprietary and subject to tort liability versus operations which are governmental and immune from such liability is a difficult task." *Pulliam v. City of Greensboro*, 103 N.C. App. 748, 751, 407 S.E.2d 567, 568 (1991). Nevertheless, it is a task we must undertake.

"Historically, government functions are those activities performed by the government which are not ordinarily performed by private corporations." *McIver*, 134 N.C. App. at 586, 518 S.E.2d at 525.

> "Any activity of the municipality which is discretionary, political, legislative or public in nature and performed for the public good in behalf of the State, rather than for itself, comes within the class of governmental functions. When, however, the activity is commercial or chiefly for the private advantage of the compact community, it is private or proprietary."
>
> *Millar v. Town of Wilson*, 222 N.C. 340, 341, 23 S.E.2d 42, 44 (1942). We have provided various tests for determining into which category a particular activity falls, but have consistently recognized one guiding principle: "[G]enerally speaking, the distinction is this: If the undertaking of the municipality is one in which only a governmental agency could engage, it is governmental in nature. It is proprietary and 'private' when any corporation, individual, or group of individuals could do the same thing." *Britt v. City of Wilmington*, 236 N.C. 446, 451, 73 S.E.2d 289, 293 (1952).

*Evans v. Housing Auth. of City of Raleigh*, 359 N.C. 50, 54, 602 S.E.2d 668, 671 (2004). Furthermore, "activities that can be performed by either private persons or government agencies may be shielded, depending on the nature of the activity. . . . For example, children may be educated by either public schools or private schools, but public schools are still granted governmental immunity." *McIver*, 134 N.C. App. at 587, 518 S.E.2d at 526 (citation omitted). In the instant case, we are dealing with the construction of a sewer system.

Northwest contends that the construction of a sewer system is a governmental function and therefore it is entitled to governmental immunity. In support of its position, Northwest relies on *McCombs v. City of Asheboro*, where the plaintiff's intestate crawled into a ditch

excavated for the laying of a sewer line and was killed when the ditch partially collapsed on top of him. 6 N.C. App. 234, 235, 170 S.E.2d 169, 170 (1969). In *McCombs*, we addressed the issue of governmental immunity and noted "that the courts are sharply divided as to whether the construction of a sewerage system constitutes a governmental function or a proprietary function." *Id.* at 240, 170 S.E.2d at 173. Yet, we ultimately held "the construction of a sewerage system is a governmental function . . . ." *Id.*

However, *McCombs* was decided over 40 years ago and in the opinion we acknowledged that "[t]he line between powers classed as governmental and those classified as proprietary is none too sharply drawn and seems to be subject to a change in position as society changes and progresses and the concepts of the functions of government are modified." *Id.* at 238, 170 S.E.2d at 172. Thus, we do not find *McCombs* dispositive.

Although not binding on this Court, we find *City of Gastonia v. Balfour Beatty Constr. Corp.*, 222 F. Supp. 2d 771 (W.D.N.C. 2002), instructive in this case. In *Balfour*, the court considered whether the construction of a water treatment facility was a governmental or proprietary function. While attempting to apply the law as it anticipated the North Carolina Supreme Court would, the court stated,

> [t]he law of North Carolina requires that the Court look with particularity at the specific function alleged to be governmental. It is not enough to say that "construction" of a water treatment plant is governmental. The Court must look at what part of the long process of construction is alleged to be governmental and which parts are alleged to be proprietary. The decision to construct a water treatment plant, the determination of where to locate it, as well as the setting of standards for its capacity and capability are all exercises of governmental function utilizing governmental discretion. How the City of Gastonia conducts its business relationships with contractors and subcontractors is not inherently governmental—such a function requires no exercise of governmental discretion.

*Id.* at 774.

In the present case, ECC claims "Northwest owed [it] a duty of reasonable care in the exercise of its responsibilities on the Project[]" and Northwest breached this duty by "failing to provide Contract

TOWN OF SANDY CREEK v. COAST CONTR'G, INC.

[224 N.C. App. 537 (2012)]

Documents sufficient for construction of the Project[,]" "improperly certifying that ECC's work was complete and in conformance with the Contract Documents[,]" accepting "Engineering Services, P.A.'s improper certification that ECC's work was complete and in conformance with the Contract Documents[,]" "failing to direct ECC to correct the allegedly damaged Sandy Creek streets[,]" "failing to properly administer the Contract such that sufficient funds remained to pay for the work to correct the allegedly damaged Sandy Creek streets[,]" and "failing to retain a competent representative to administer the Contract in such a way so as to avoid harm to third parties."

Northwest argues these are political decisions to which ECC attempts to attribute liability. We disagree. These allegations of breaches of the duty of reasonable care do not concern decisions of government discretion such as whether to construct a sewer system or where to locate the sewer system. Instead, the alleged breaches concern Northwest's handling of the contract and Northwest's business relationship with the contractor, acts that are not inherently governmental but are commonplace among private entities.

Thus, even where "the focus is on the nature of the service itself, not the provider of the service[,]" *Wright v. Gaston County*, 205 N.C. App. 600, 606, 698 S.E.2d 83, 88 (2010), we find that Northwest was involved in a proprietary function while handling its business relationship with ECC and the trial court did not err in denying Northwest's motion to dismiss based on governmental immunity.

### III.  Conclusion

Accordingly, we affirm the trial court's order on the limited basis of governmental immunity.

Affirmed.

Judges GEER and STEPHENS concur.